**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

DANIEL BARELA and ERICA
BEGAY, on behalf of themselves
and others similarly situated

      Plaintiffs,

v.                                                                      Civ. No. 11-506 WJ/GBW

CITICORP USA, INC.,

      Defendant.

## ORDER FOR DEFENDANT TO PAY PLAINTIFFS' COSTS AND ATTORNEYS' FEES

THIS MATTER comes before the Court on a review of Defendant's response, (*doc. 45*), to the Court's order to show cause, (*doc. 43*). The Court ordered Defendant to show cause why the Court should not sanction Defendant for failing to disclose to the Court ongoing settlement negotiations in another case that had the potential to dramatically alter the need for litigation in this case. *Id.* at 1-2. The Court ordered Defendant to show cause why it should not award sanctions under: (1) Federal Rule of Civil Procedure 16, (2) Federal Rule of Civil Procedure 11, (3) 28 U.S.C. § 1927, and (4) the Court's inherent authority. Defendant's response, (*see doc. 45*), fails to persuade the Court.[1] The Court will therefore order Defendant to pay Plaintiffs' costs and attorneys'

---

[1] Defendant's written response does not request a hearing and the Court is fully advised based on the briefing.

fees for participating in the meet-and-confer session, the Rule 16 conference, and for the filing and litigation of the motion to stay and the motion to compel.

## *Background*

The claims raised in the instant case ("*Barela*") bears a close relationship to the matter, *Tolanda Osby, et al. v. Citigroup Inc., et al,* Case No. 5:07-CV-6085-NKL ("*Osby*") filed in the United States District Court for the District of Missouri on August 2, 2007. *Doc. 24* ¶¶ 3, 7. The *Osby* plaintiffs sued Defendant for "violations of the federal Fair Labor Standards Act ("FLSA"), for which they sought certification of a nation-wide collective action" as well as a state-wide class for state law claims. *Doc.* 24 ¶ 3. The parties in *Osby* initially reached a settlement regarding only Defendant's Kansas City facility on June 22, 2009. *Id.* ¶ 4. In late 2009 and 2010, because of inquiries from employees at Defendant's call centers outside of Kansas, plaintiffs' attorney in *Osby* contacted Defendant to discuss an extension of the settlement agreement. *Id.* ¶ 5. Defendant thereafter undertook extensive negotiations to supplement the original settlement in *Osby* in order to encompass, among others, the employees at Defendant's Albuquerque facility. *Id.* As of May, 2011, Defendant was still involved in these negotiations.

In May, 2011, the instant suit ("*Barela*") was filed in New Mexico state court. *Doc. 1* at 2. The suit involved different plaintiffs' counsel and sought to bring a class action on behalf of Defendant's employees at the Albuquerque facility. *Id.*, Ex. A.

As Defendant has noted, however, [t]he allegations that Plaintiffs raise [in *Barela*] are virtually identical to the allegations previously raised" in *Osby*.  *Doc. 24* ¶ 3.

Defendant removed the instant suit to this Court in June 2011.  *Id*. at 1.  On July 19, 2011, this Court issued an order requiring counsel in *Barela* to meet and confer regarding a discovery plan, to file a Joint Status Report and Provisional Discovery Plan ("JSR"), and to attend a Rule 16 conference with the Court.  *Doc. 16* at 1-2.  The order directed that "at the Rule 16 scheduling conference, counsel will be prepared to discuss discovery needs and scheduling, [and] all claims and defenses…."  *Id*.  Moreover, counsel was advised that the discussion with the Court would include "settlement prospects and alternative dispute resolution possibilities."  *Id*.

On August 2, 2011, unbeknownst to *Barela* plaintiffs' counsel, Defendant's counsel engaged in a private mediation with plaintiffs' counsel in *Osby* which, if successful, would resolve, *inter alia,* the claims of the putative class in *Barela* and render the instant suit moot.  *Doc. 45* at 3-4.  The mediation did not result in a settlement, but "extensive negotiations" with the goal of resolving the claims underpinning the *Barela* suit continued.  *Doc. 45*, Ex. A ¶ 3.

On August 29, 2011, *Barela* plaintiffs' counsel and Defendant's counsel met and conferred pursuant to the Court's initial scheduling order.  *Doc. 17* at 1.  At no time during those discussions did Defendant's counsel alert *Barela* plaintiffs' counsel of the recent *Osby*  mediation or the ongoing negotiations designed to settle the *Barela* claims.

Subsequent to the meet-and-confer, the parties filed the JSR with the Court.  In the JSR, Defendant's counsel agreed with *Barela* plaintiffs' counsel that the Court should schedule an initial phase of discovery of 180 days to prepare for class certification briefing.  *Id*. at 5.  The JSR made no mention of the ongoing negotiations designed to settle the *Barela* claims.  In fact, Defendant's counsel approved the statement that the "possibility of settlement in this case is considered … unlikely."  *Id*. at 6 (under the heading "Settlement" the option listing the possibility of settlement as "unlikely" is bolded).

On September 8, 2011, the Court held the Rule 16 discovery scheduling conference.  *Doc. 19*.  The statements by Defendant at the conference were consistent with the JSR.  In the conference, the Court discussed the discovery that would be required to prepare for class certification briefing and the time it would take.  *Id*.  Based on these discussions, the Court scheduled a "class certification" phase of discovery to last 120 days.  *Docs. 18, 19*.  At no time during the 34-minute conference did Defendant's counsel mention recent *Osby* mediation or the ongoing negotiations designed to settle the *Barela* claims.  *Doc. 19*.

On November 7, 2011, *Barela* plaintiffs' counsel served their First Set of Interrogatories and First Requests for Production of Documents.  *Doc. 45* at 6.  On November 29, 2011, pointing to the "breadth of the requests" and the approaching holidays, Defendant's counsel requested a 30-day extension of time to respond from

*Barela* plaintiffs' counsel, making Defendant's responses due on January 11, 2012. *Id*. at

7.  On December 5, 2011, *Barela* plaintiffs' counsel agreed to this extension, which led

inexorably to an agreed extension of the class certification discovery phase and the

briefing on the motion for class certification. *Id*.; *see also docs. 20, 22*.  Notably, at the

time *Barela* plaintiffs' counsel agreed to the extension, they expressly stated that

"Plaintiffs agree to these extensions under the belief that the production on January 11

with [sic] be complete and responsive…."  *Doc*. *45*, Ex. 3 at 1.  Defendant's counsel did

not dispute this belief.  *Id*.

On December 23, 2011, Defendant's counsel reached "an agreement in principle"

with *Osby* plaintiffs' counsel to supplement the settlement agreement in *Osby* such that

it covered the *Barela* claims.  *Id*. at 8.  On January 4, 2012, Defendant moved this Court

to stay the *Barela* case on the basis of this agreement.  *Doc. 24*.

On January 11, 2012, Defendant responded to Plaintiffs' First Set of

Interrogatories and First Requests for Production of Documents by filing objections to

each and every interrogatory and request for production.  *Doc. 26*, Ex. 2.  After three full

pages of "general objections," Defendant laid out its objections as to each request.  *Id*.

While these varied slightly from request to request, each objection appears based on an

alleged defect which would have been apparent to Defendant's counsel upon the initial

reading of the request, or, at the most, after a short consultation with the client.  *Id*.

On February 29, 2012, the court in *Osby* entered a final order approving the settlement agreement. *Doc. 39,* Ex. A. As accurately explained by Defendant's counsel, this settlement agreement will "have a material and potentially preclusive effect on the [*Barela*] Plaintiffs' and putative class members' claims…." *Doc. 24* at 3-4. Consequently, on March 19, 2012, the Court granted Defendant's motion to stay the case because "proceeding with discovery in *Barela* before the extent of [the effect of the *Osby* settlement] is known would likely waste time and resources." *Doc. 44.* at 2-3.

Based on Defendant's apparent lack of candor about the ongoing 2011 *Osby* settlement negotiations both with *Barela* plaintiffs' counsel and in proceedings before this Court, the Court ordered Defendant to show cause as to why the Court should not sanction Defendant by ordering Defendant to pay Plaintiffs' costs and attorneys' for activity thus far in the case. *Doc. 43* at 6. Specifically, the Court considered imposing sanctions pursuant to four sources of authority: (1) Federal Rule of Civil Procedure 16, (2) Federal Rule of Civil Procedure 11, (3) 28 U.S.C. § 1927, and (4) the Court's inherent authority. *Id*. at 2. The Court, having reviewed Defendant's briefing (*doc. 45)*, finds sanctions appropriate under Rule 16. Consequently, the court need not, and does not, express an opinion about the appropriateness of sanctions under the other sources of authority.

<u>*Analysis*</u>

## A. **Defendant Did Not Participate in the *Barela* Rule 16 Conference in Good Faith**

Rule 16(f) authorizes the Court to issue "any just orders" as sanctions in response to certain behavior by litigants.  Fed. R. Civ. P. 16(f)(1).  The Court may issue these sanctions if a party "does not participate in good faith" in the Rule 16 conference.  *Id.* 16(f)(1)(B).  So, under Rule 16, the question is simply stated: did Defendant, through their counsel, fail to participate in the Rule 16 conference in good faith when it did not advise opposing counsel or the Court at that conference of the ongoing *Osby* negotiations.  Nonetheless, this formulation hides the real question of what "participate in good faith" means in the context of a Rule 16 discovery scheduling conference and what the sanctions for violations of that requirement are designed to accomplish.

The Tenth Circuit has stated that Rule 16's "spirit, intent, and purpose is clearly designed to be broadly remedial, allowing courts to actively manage the preparation of cases for trial."  *In re Baker*, 744 F.2d 1438, 1440 (10th Cir. 1984).[2]  Subsection (f) of Rule 16 "indicates the intent to give courts very broad discretion to use sanctions where

---

[2] The *Baker* court addressed a previous version of Rule 16(f) which read, "If a party or party's attorney fails to obey a scheduling or pretrial order . . . participate in good faith [in the Rule 16 conference], the judge upon motion or upon the judge's own initiative, may make such orders with regard thereto as are just, and among others any of the orders provided in Rule 37(b)(2)(B), (C), (D).  In lieu of or in addition to any other sanction, the judge shall require the party or the attorney representing the party or both to pay the reasonable expenses incurred because of any noncompliance with this rule, including attorney's fees, unless the judge finds that the noncompliance was substantially justified or that other circumstances make an award of expenses unjust."  The current Rule's substance is not significantly different as relevant to the instant issue.

necessary to insure . . . that lawyers and parties . . . fulfill their high duty to insure the expeditious and sound management of the preparation of cases for trial." *Id.* "[T]he sanctions concept contained in subsection (f) is a codification of the purpose to insist that the court, the lawyers and the parties abandon habits which unreasonably delay and otherwise interfere with the expeditious management of trial preparation." *Id.* at 1441. When a court imposes Rule 16(f) sanctions, it is "dealing with the matter most critical to the court itself: management of its docket and avoidance of unnecessary burdens on the tax-supported courts, opposing parties or both." *Id.* "The primary purpose of sanctions [under Rule 16(f)] is to insure reasonable management requirements for case preparation. The secondary purpose is to compensate opposing parties for inconvenience and expense incurred because of any noncompliance with the reasonable management orders of the court." *Id.* "[T]he message which sanctions [under Rule 16(f) are designed to convey [is] the imperative of expeditious management of preparation of cases for trial." *Id.* at 1442.

There can be little doubt that the fact of ongoing and extensive settlement negotiations in *Osby* which could completely foreclose the claims in *Barela* would be highly relevant to the establishment of a discovery plan and the Court's sound management of the *Barela* case. For example, with such information, the Court would have considered staying the case from the outset to permit time for the *Osby*

negotiations to resolve or fail.[3]  By failing to advise the Court of the *Osby* negotiations,

Defendant withheld information clearly material to the Rule 16 scheduling conference.

*See e.g,. Kingsley Group, Inc. v. Kellogg USA, Inc.*, 2002 WL 32100264 (N.D. Ill. May 23,

2003) (conduct of attorneys in failing to disclose at scheduling conference that they

intended to object to discovery was a failure to participate in a Rule 16 conference in

good faith).

      Defendant, however, argues that their participation was still in good faith.  First,

Defendant contends that any obligation to advise the Court of the *Osby* settlement arose

only when an agreement is reached or is, at least, imminent.  *Id*. at 11.  However, none

of the cases cited by Defendant for this proposition are persuasive.  *See Gould v. Bowyer*,

11 F.3d 82 (7th Cir. 1993); *Quizno's Franchising II, LLC v. Zig Zag Restaurant Group, LLC*,

244 P.3d 602 (Colo. Ct. App. 2010); and *Riesenecker v. Ark. Best Freight Sys.*, 796 P.2d 1147

(N.M. Ct. App. 1990).  In each case, the court addressed circumstances where it had

entered an opinion or order well after the parties had resolved the case by settlement.

In each case, the court concluded that it had the power to sanction the failure of a party

to promptly advise the court of a settlement.  While each of those cases did involve a

finalized agreement, they do not answer the question in this case.  Those cases stand

only for the propositions that: (1) courts can establish an independent obligation to

---

[3] Defendant's asserts that Plaintiffs would have "undoubtedly" opposed such a stay.  *Doc. 45* at 3.  While this assumption may have been true, obviously the Court had the power to order a stay over Plaintiffs' objections.  *See doc. 44.*

advise them of finalized or imminent settlement agreements in pending cases; and (2) courts have the inherent authority to sanction the failure to do so.  The instant issue is focused on an obligation explicitly established in Rule 16 – to participate in a discovery scheduling conference in good faith.  It simply does not follow that, because it is sanctionable for parties to fail to advise a court of a finalized settlement, the failure to advise the court of ongoing negotiations is not sanctionable, particularly when the basis for such sanctions arises from a completely different source.

Next, Defendant repeatedly emphasizes the confidential nature of the *Osby* negotiations.  In support of the assertion that these negotiations were confidential, Defendant has supplied the Court with an affidavit to that effect from one of the *Osby* plaintiffs' lawyers, Virginia Stevens Crimmins.  *Doc. 45*, Ex. B.  Crimmins states, with respect to the *Osby* negotiations, that "the parties agreed that these negotiations, and the fact that they were engaged in them, would also remain confidential."  *Doc. 45*, Ex. B ¶ 5.  As an initial matter, the proposition that Defendant, by making a confidentiality agreement with another party not before this Court, can essentially contract out of its obligation to participate in good faith in a proceeding before this Court, is highly suspect.  However, further examination exposes the true audacity of the argument.  According to the Crimmins' affidavit, "[a]t all times during these negotiations, [*Defendant*] *insisted* that confidentiality remain a key component of the settlement and it was included in the final settlement agreement."  *Id.* ¶ 7 (emphasis added).  It is a fair

inference that Defendant was the driving force behind the confidentiality "agreement" in *Osby* which it now wishes to raise as a defense to its failure to inform the Court of the material fact of ongoing negotiations.  The Court rejects this attempt.

Finally, Defendant argues that it "had a good faith basis for believing that it had no obligation to disclose the fact that it was engaged in settlement negotiations, when there was . . . the real risk that a premature disclosure of the confidential *Osby* negotiations would have frustrated the well-settled policy of encouraging settlement." *Doc. 45* at 10.  Defendant states that, if it had revealed the ongoing *Osby* negotiations, "any supplemental *Osby* settlement likely would have been thwarted, and further litigation would have ensued both in this case *and* in *Osby* – all in derogation of state and federal courts' recognition of the public policy of promoting settlement of disputes and judicial and party economy." *Id.* at 18 (emphasis in original).  Defendant explains that this would have occurred because Plaintiffs would have attempted to involve themselves in the *Osby* litigation, and that efforts at settling in *Osby* would have been more difficult because "accounting for [Plaintiffs' counsel's] fee would have made reaching a supplemental settlement more difficult." *Id.* at 17.  Defendant also argues that "restarting settlement discussions that had already begun more than a year before *Barela* was filed with a new set of attorneys would have deterred those negotiations . . . ." *Id.* at 17-18.

Undoubtedly, revealing to *Barela* plaintiffs' counsel that the *Osby* plaintiffs' counsel were on the precipice of settling the *Barela* claims may have complicated the *Osby* negotiations.  Of course, Defendant's parade of horribles in which this revelation would have thwarted the settlement of the claims of the "current and former employees who worked not only in Albuquerque, but also three other call centers of Defendant" is pure speculation.  *Doc. 45* at 18.  Due to the Defendant's concealment of the ongoing negotiations, no one will ever know the result of the road not taken.  Regardless, the broad and general public policy favoring settlements cannot excuse the failure to provide the Court information material to its management of discovery as required by Rule 16.

The *Osby* negotiations were extensive, advanced, and ongoing.  If successful, the resulting agreement would dramatically alter the nature of the *Barela* case, including whether there could be a class certification or even any case at all.  Nonetheless, Defendant's counsel kept silent about them throughout the Rule 16 meet-and-confer, and approved the JSR which instead stated that the "possibility of settlement in this case is considered … unlikely."  *Id*. at 6.  Defendant's counsel kept silent about them throughout the Rule 16 conference while the Court discussed with the parties the extent of discovery necessary for the class certification briefing.  In each of these circumstances, Defendant's counsel failed to participate in the Rule 16 conference in good faith.

The finding of a lack of good faith is further supported by Defendant's conduct in the class certification discovery phase.  As discussed above, while the *Osby* supplemental settlement negotiations were approaching resolution, Defendant's requested a delay for their pending discovery responses.  The request was premised upon the "breadth of the requests" and the approaching holidays.  *Doc. 45* at 7. Defendant's counsel made no mention of any objection to producing the materials requested, instead implying that Defendant simply needed more time to produce them. *Id.*, Ex. 3.  Defendant's counsel allowed that misperception to remain with Plaintiffs' counsel when he did not disabuse Plaintiffs' counsel of his "belief that the production on January 11 with [sic] be complete and responsive…."  *Doc. 45*, Ex. 3 at 1.  Instead, by getting Plaintiffs' counsel to agree to the extension, Defendant was able to wrap up the *Osby* supplemental negotiations, move for a stay in *Barela*, and then, on the last date for the discovery response pursuant to the extension, file a laundry list of garden variety objections to each and every discovery request from *Barela* plaintiffs' counsel.  One can reasonably infer, based on these objections, that the requested extension was designed primarily to give Defendant time to avoid any discovery in *Barela* via an expanded *Osby* settlement.

## B.  Defendants Are Subject to Sanctions for Their Failure to Participate in Good Faith

Having found that Defendant failed to participate in the Rule 16 conference in good faith, the Court now turns to the question of appropriate sanctions.  The Court has

indicated that it was considering requiring Defendant (or counsel) "to pay Plaintiffs their costs and attorney's fees associated with the meet-and-confer session, the Rule 16 conference, the Motion to Compel, and the Motion to Stay." *Doc. 43* at 6. Defendant takes issue with these sanctions arguing that (1) the time associated with the Rule 16 conference would have been expended notwithstanding Defendant's conduct; (2) an award connected to the motion to compel would be inappropriate given that Plaintiffs did not sufficiently attempt to address the issues without the intervention of the court and, in any event, the motion was denied; and (3) an award connected to the motion to stay would be inappropriate given that the motion was granted.

Defendant first argues that "even if Defendant had disclosed [the *Osby* supplemental negotiations,] the parties here had to prepare for and participate in the Rule 26 and 16 conferences regardless. There is nothing to suggest more costs were expended in connection with preparing for and attending these two conferences because Defendant did not disclose the fact of the *Osby* settlement negotiations." *Doc. 45* at 15. Indeed, when considering the appropriate sanction, the Court must order[4] the payment of "expenses – including attorney's fees – incurred because of any noncompliance with" Rule 16. *See* Fed. R. Civ. P. 16(f). However, the power to sanction is not limited to these "but-for" expenses. To the contrary, the Court is empowered to "issue any just order[]" to sanction such noncompliance. *Id*. For this reason, much of

---

[4] This mandatory language is inapplicable if "the noncompliance was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 16(f).

Defendant's argument – that their behavior was not the "but-for" cause of a particular expenditure of time or money – while relevant, is not determinative of what sanction should be imposed. The root question is what is a just sanction given Defendant's conduct.

While Defendant is correct that a Rule 16 conference would have been held if it had participated in good faith and advised the Court of the *Osby* negotiations, it would have been a very different conference. It would have been a conference as Rule 16 intended, where the Court could intelligently consider the various options regarding the management of this case. Instead, Defendant's lack of good faith led to a scheduling conference which was essentially a sham. Throughout the conference, while the Court and *Barela* plaintiffs' counsel spent time discussing the appropriate discovery plan for the class certification phase, Defendant remained silent about its feverish attempts to make the plan moot. Consequently, it is entirely just that Defendant pay Plaintiffs' expenses for participating in the meet-and-confer and the Rule 16 conference.

With respect to the motion to compel, Defendant points out that "it was filed after Defendant filed its January 4, 2012 Motion to Stay, after Defendant told Plaintiffs it was willing to further discuss their discovery issues, and after Defendant encouraged Plaintiffs to address any discovery issues that could be raised in a motion to compel in their opposition to Defendant's Motion to Stay considering the overlap in these issues, rather than overloading the court with multiple motions. Indeed, Plaintiff's [sic]

Motion to Compel ultimately was denied." *Doc. 45* at 17.  It is important to remember, however, that the sole basis for denying Plaintiffs' Motion was the granting of the stay so the denial indicates nothing about the merits of Defendant's objections.  Moreover, Plaintiffs' rejection of Defendant's entreaties to "further discuss their discovery issues" was completely understandable.  Plaintiffs had already discussed the lack of discovery responses, and when agreeing to an extension, counsel had advised that "Plaintiffs agree to these extensions under the belief that the production on January 11 with [sic] be complete and responsive, [and] we reserve the right to bring motions to compel if the production is not forthright." *Doc. 45*, Ex. 3.  Instead, between the motion to stay and the objections to every discovery request, Plaintiffs had learned that none of their prior discussions on "discovery issues" had been forthright.  The Court can hardly blame them for wanting to bring the issues immediately to the Court.  The motion to compel was a natural and probable consequence of Defendant's lack of good faith participation in the Rule 16 conference.  Defendant had wanted the full benefit of the supplemental *Osby* negotiations including a stay of any discovery in *Barela* without revealing those negotiations until they were a *fait accompli*.  Under these circumstances, it is entirely just that Defendant pay Plaintiffs' expenses related to the motion to compel.

     With respect to the motion to stay, "Defendant submits that it would be inappropriate to award Plaintiffs their fees and costs for opposing a motion that was granted (Defendant's Motion to Stay), which Defendant would have filed and Plaintiffs

16

would have opposed even if Defendant had disclosed the *Osby* negotiations earlier…."

*Doc. 45* at 17.  This argument suffers from the same flaws as does the argument related

to the Rule 16 expenses. First, sanctions are not limited to "but-for" expenses.  Second,

while Plaintiffs would likely have opposed any request for a stay, this issue may have

been completely resolved at the Rule 16 conference had Defendant participated in good

faith.  The Court could have heard arguments regarding the stay at that time and

communicated its inclination regarding a stay.  Certainly, if the Court had been given

the opportunity to indicate an inclination to grant a temporary stay to permit the *Osby*

negotiations to run their course, it is possible that Plaintiffs would have requested the

opportunity to brief the issue.  But it is at least as likely that they would have decided

against such an effort.  Again, the Court can only speculate about what would have

happened if Defendant had properly advised the Court of the negotiations in the Rule

16 conference as good faith participation would have dictated.  In any event, the Court

has no doubt that, under these circumstances, it is entirely just that Defendant pay

Plaintiffs' expenses related to the motion to stay.

### *Conclusion*

As detailed above, Defendant failed to participate in the Rule 16 conference in

good faith.  The Court finds that a just sanction for this failure is to order Defendant to

pay Plaintiffs' costs and attorneys' fees associated with the Rule 26 meet-and-confer

session, the Rule 16 conference, the motion to compel, and the motion to stay.  The

Court has previously ordered Plaintiffs' counsel to submit affidavit(s) itemizing these expenses, and counsel had done so.  *See docs. 42, 46, 47*.  Pending the decision on the appropriateness of sanctions, the Court permitted Defendant to defer its objections to those expenses.  *See docs. 48, 49*.  From the date of this order, Defendant shall have ten (10) days to file objections as to whether the fees and costs as tabulated in *docs. 46* and *47* are excessive or unreasonable.

**IT IS SO ORDERED.**

_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE