# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

DANIEL BARELA and
ERICA BEGAY on behalf of themselves
and all others similarly situated,

                Plaintiffs,

v.                                         Civ. No. 11-506 KG-GBW

CITICORP USA, INC.,

                Defendant.

## DECLARATION OF SHANE YOUTZ

I, Shane Youtz, declare as follows:

1. I am a named partner at the law firm of Youtz & Valdez P.C., counsel of record for Plaintiffs. I make this declaration based on my personal knowledge, and if called to testify to the contents hereof, I could and would competently do so.

### I. Procedural History

2. Plaintiffs filed their Complaint against Citi in state court on May 5, 2011, alleging that Citi failed to pay its call center phone representatives for all time spent during the continuous workday, including pre- and post-shift work.

3. Citi removed the case to this Court, and, on July 18, 2011, filed its Answer denying the material allegations in Plaintiffs' Complaint and asserting multiple affirmative defenses.

4. On January 4, 2012, without prior notice, Citi filed a motion to stay the case and announced that it had moved to re-open a prior similar case filed in the United States District Court for the Western District of Missouri and was asking that Court to approve a settlement of the claims on behalf of telephone-dedicated representatives in several of Citi's call centers, including the claims of New Mexico phone representatives pending in this case.

5. Plaintiffs opposed the stay, and fought unsuccessfully to intervene in the Missouri case and object to the settlement of the New Mexico claims as inadequate.

6. This Court granted Citi's request for a stay, the Missouri court approved Citi's settlement, and, afterward, litigation at long last resumed in this Court on behalf of those New Mexico phone representatives that did not opt in to the Missouri settlement.

## II. Settlement Negotiations and Exchange of Class Data

7. On March 18, 2014, the parties formally mediated the case at the offices of Citi's counsel in New York City with nationally-renowned mediator Michael Dickstein of Dickstein Dispute Resolution. Mr. Dickstein has significant experience mediating complex employment matters, and in fact mediated the overlapping *Osby* case filed in the United States District Court for the Western District of Missouri.

8. Before mediation in this case, the parties exchanged information to ensure there could be an informed and constructive mediation, which included class, payroll, and compensation data.

9. Both before and during mediation, the parties evaluated Citi's policies and procedures regarding compensation, training, and time reporting; job responsibilities and duties; and payroll data showing weeks and hours worked and wage rates during the class period.

10. Negotiations were robust as both sides zealously advocated their interests.

11. At the close of mediation, the parties reached an agreement.

12. Even after the parties reached an agreement in principle, details of the settlement involved extensive further negotiation and compromise.

13. Plaintiffs' counsel's requested fee is far less than their lodestar. Nevertheless, Plaintiffs' Counsel agreed with Citi as part of this settlement to limit their fee to one-third of the Settlement Fund rather than seek to recover their significantly higher lodestar.

### III. Settlement

14. Based on Plaintiffs' counsel's experience in other wage and hour class and collective actions, this Settlement achieves a reasonable compromise of a bona fide dispute involving contested legal and factual issues.

15. In Plaintiffs' counsel's view, the Settlement provides substantial benefits to the class, especially when one considers, among other things, the attendant expense, risks, difficulties, delays, and uncertainties of litigation, trial, and post-trial proceedings.

### IV. Class Representatives

16. Plaintiffs Barela and Begay were responsible for initiating this action by investigating and retaining counsel experienced in similar litigation. They provided invaluable guidance to Plaintiffs' counsel in prosecuting this case on behalf of other similarly situated employees.

17. They assisted Plaintiffs' counsel in evaluating Citi's proffered defenses to this action and in understanding Citi's payroll system. They were active and involved in the prosecution of this case from beginning to end.

18. In doing so, Plaintiffs spent time and undertook risks, including the risk they would not prevail, that the class would not be certified, and that they could be liable to Citi for costs if their claims were unsuccessful.

19. The other Class Members substantially benefited from their actions. Without their efforts in initiating and prosecuting the case, this settlement would not have been achieved.

### V. Attorneys' Fees and Expenses

20. I obtained my J.D. from the University of Minnesota Law School in 1991, after receiving a B.A. from the University of Wyoming in 1988.

21. I am admitted to practice in, and am a member in good standing of, the following bars: State Bar of California, 1991; State Bar of New Mexico, 1998; California Federal District Courts for the Northern, Central and Southern Districts and the 9th Federal Circuit Court of Appeals, 1992; New Mexico Federal District Court and the 10th Federal Circuit Court of Appeals, 1998; Texas Federal District Court for the Northern District of Texas, 2000; and the D.C. Federal Circuit Court of Appeals, 2014.

22. I have been engaged in the practice of law since 1991. From 1991 to 1998, I practiced in Los Angeles, California as a litigation associate in the area of environmental litigation and was involved in some of the largest Superfund lawsuits in the United States, litigating in California, New Jersey and New York. In 1998, I relocated to New Mexico, joining the firm of Youngdahl & Sadin P.C.

23. At Youngdahl & Sadin, P.C. (which was subsequently succeeded by the firm of Provost Umphrey, in or about May of 2001), I worked primarily on labor and employment related matters, including multi-district class actions and collective actions. I became a partner with the firm in 2001. During the period from 1998 through 2001 I gained extensive class action experience representing plaintiffs in New Mexico and other states, including Arkansas, California, New Jersey, Oregon, Texas and West Virginia. Additionally, I successfully tried lawsuits to juries on behalf of classes of individuals in state and federal courts, including a trial before a special master appointed by New Mexico Federal District Court Judge Conway against Wal-Mart in Gallup, New Mexico under similar facts to the instant facts. I was also co-lead counsel with my co-counsel in this case (James Piotrowski) in a six week FLSA jury trial venued in the Oregon Federal District Court. I am currently a principal at Youtz & Valdez, P.C., which

specializes in wage-and-hour litigation and consumer antitrust litigation, as well as the direct representation of labor unions.

24. Over the course of nearly twenty years as a lawyer, I have been involved in many different wage-and-hour collective actions. My involvement has encompassed all aspects of such litigation including discovery, motion work, trial and appellate work. In the course of my practice I have recovered well in excess of $10 million cumulatively on behalf of employees making wage claims against their employers.

25. My experience and expertise in the area of wage-and-hour law has been developed as a consequence of litigating between 50 and 100 matters on behalf of employees. The litigation includes litigation under the FLSA as well as many state wage-and-hour laws including California, Oregon, Texas, Washington, Colorado, New Mexico, Pennsylvania and West Virginia. I have litigated every aspect of FLSA actions from pre-filing to appellate work in both State and Federal Court.

26. I am recognized nationally as an expert in the area of wage-and-hour law and the FLSA and have been recruited to both speak and publish papers on FLSA topics at national conferences for both plaintiffs practitioners as well as corporate counsel. Some of the conferences at which I have been asked to speak on FLSA topics include the following:

> 2013 ABA 7th Annual Labor and Employment Law Conference, November 6-9, 2013, New Orleans, LA.
>> One of four panel members discussing: "Compensable Time in a Digital Age: Beyond Donning and Doffing." Authored paper for the conference titled, "Record Keeping in an Evolving Workplace."
>
> 2010 ABA National Conference on Employment Law, March 23-27, 2010, San Antonio, TX.
>> One of three panel members discussing: "The New New New Thing: Current Topics in Complex FLSA Litigation." Authored paper for the conference titled, "Jury Instructions in a Collective Action Trial."

      2008 ABA National Conference on Employment Law, March 26-29, 2008, Tucson, AZ.

          One of three panel members discussing: "The FLSA at the Frontier"

NBI Wage & Hour Seminar: "Wage & Hour Claims: A Practical Guide to Claim Resolution," Albuquerque, NM, September 19, 2006.

          I prepared a paper and led discussions on the following topics: Compensable work hours, Exemption Classification & Overtime Regulations Under FLSA, Common areas of dispute and wage & hour claims and proceedings

Wal-Mart Litigation Conference, April 21, 2006, Washington, D.C., "Wage and Hour litigation across the United States."

AFL-CIO Union Lawyer's National Conference, May 11-13, 2005, San Francisco, CA
          Panel Discussion: May 12, 2005 "The New Overtime Regulations and other FLSA Issues"

A true and correct copy of my firm's current resume is attached hereto as Exhibit 1.

27. Although my firm has experienced success in prosecuting contingent fee cases, it has also experienced the tremendous risks that attend contingent fee litigation. Large-scale cases are, by their very nature, complicated and time-consuming. Firms undertaking representation of large numbers of affected employees in wage and hour actions inevitably must be prepared to make a tremendous investment of time, energy, and resources. Due also to the contingent nature of the customary fee arrangement, lawyers must be prepared to make this investment with the very real possibility of an unsuccessful outcome and no fee of any kind.

28. Over the past three years, my firm has spent more than 183.25 hours litigating this case with no assurance of any recovery at all.

29. During this time, my firm had opportunities to spend their time on more profitable ventures, but diligently finished what they started.

30. As of the filing of this fee application, my firm's lodestar totals $108,101.50 at my firm's standard hourly rates applicable to both hourly and contingent fee engagements.

31. Importantly, there is still work to be done. Plaintiffs' Counsel must work with the Settlement Administrator to ensure the settlement is properly administered and answer inquiries from class members regarding the terms and consequences of the settlement and the computation and payout of the settlement. I reasonably anticipate our firms will collectively expand dozens of additional hours to administer the settlement, for no additional compensation.

32. My firm has also incurred $2,316.90 in expenses prosecuting this case. The expenses we incurred are of the same type and nature of the expenses that my firm typically charges to hourly clients and that we seek reimbursement for in other similar cases. These expenses have been charged at cost and not marked up.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.

Executed on this 4th day of September, 2014 in Bernalillo County.

_____
Shane Youtz

STATE OF NEW MEXICO      )
                         ) ss.
COUNTY OF BERNALILLO     )

SUBSCRIBED TO AND SWORN before me this 4th day of September, 2014, by Shane Youtz.

_____
Notary Public

My Commission Expires: __11-15-14__

7

**YOUTZ & VALDEZ, P.C. is a law firm dedicated to representing Unions and their members individually and collectively through class actions.** The firm also focuses on wage and hour litigation and has been involved in many high profile FLSA claims over the last ten years. Firm practice areas include, Union side labor law, Fair Labor Standards Act, and complex civil litigation including consumer and shareholder derivative litigation.

Shane Youtz received a B.A., with honors, from the University of Wyoming in 1988 and a J.D. from the University of Minnesota in 1991. Shane specializes in representing workers individually and through their unions. Shane has litigated claims on behalf of workers and unions against some of the largest corporations in the world and has successfully tried lawsuits to juries on behalf of individuals as well as on behalf of classes of individuals. Shane's experience on behalf of unions includes work in many trial courts, the New Mexico Supreme Court, the United States Courts of Appeal and work before the National Labor Relations Board. He also has extensive experience with labor arbitrations and negotiating collective bargaining agreements. Shane represents Unions in both the public and private sector. Sample clients include: AFSCME, Health Care and Hospital Workers Union, American Federation of Teachers, Communications Workers of America, Food and Commercial Workers Union, United Mineworkers Union, International Brotherhood of Electrical Workers, Union of Operating Engineers, and the Carpenters Union.

Shane's verdicts over the last ten years have been widely reported in such media outlets as the New York Times, Washington Post, CBS Evening News, and NPR, among others.

Shane has litigated cases in Arizona, Arkansas, California, Iowa, New Jersey, New Mexico, Oregon, Texas and Utah and is admitted to practice before several state and federal courts. He is a member of the American Trial Lawyers Association, the New Mexico Trial Lawyers Foundation, and the AFL-CIO Lawyers Coordinating Committee.

**Affiliations:** Admitted to Bar California, 1991; New Mexico, 1998; California Federal District Courts and 9th Federal Circuit Court of Appeals, 1991; New Mexico Federal District Court and 10th Federal Circuit Court of Appeals, 1998; Texas Federal District Court for the Northern District of Texas, 2000.

